**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 23-1770 JB

ADRIAN PUENTES,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Defendant's Objections to the Presentence Investigative Report, filed December 1, 2025 (Doc. 66)("Objections"). The sentencing is scheduled for January 22, 2026.  The primary issues are: (i) whether the United States Probation Office's Presentence Investigation Report, filed September 22, 2025 (Doc. 60)("PSR") correctly applies an 8-level enhancement under U.S.S.G. § 2G1.3(b)(5) for Count 2 -- Coercion and Enticement of a Minor, 18 U.S.C. § 2422(b) -- because subsection (a)(3) applies, and the offense involves a minor who had not attained the age of 12 years;  (ii) whether the PSR correctly applies a cross-reference at the United States Sentencing Guidelines § 2G1.3(c)(1) for Count 1 -- Coercion and Enticement of a Minor, 18 U.S.C. § 2422(b) --  because Defendant Adrian Puentes causes a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; (iii) whether the PSR correctly applies a 2-level enhancement under U.S.S.G § 2G2.1(b)(2)(A) for Count 1, because the offense involves the commission of a sexual act or sexual contact; (iv) whether the PSR correctly applies a 2-level enhancement under U.S.S.G. § 2G2.1(b)(3) for Count 1, because Puentes knowingly engages in the distribution of child pornography; (v) whether the Court should sustain Puentes' Objection regarding the PSR ¶ 13, at 4, because the PSR suggests that Puentes posts "sexually explicit photos" of Jane Doe 1 online;

(vi) whether the Court should sustain Puentes' Objection regarding the PSR ¶ 14, at 4, because the fact that there is material on Jane Doe 1's telephone that is "sexual in nature" does not mean that Puentes causes that material to be produced or that he ever receives those materials; and (vii) whether the Court should sustain Puentes' Objections regarding the PSR ¶ 23, at 7, because Jane Doe 2 is not eleven years old at the time that the conversations between Puentes and Jane Doe 2 begin.  The Court: (i) sustains Puentes' Objection to the 8-level enhancement under U.S.S.G. § 2G1.3(b)(5) for Count 2, because the offense does not involve a minor who had not obtained the age of 12 years; (ii) overrules Puentes' Objection to the cross-reference at U.S.S.G. § 2G1.3(c)(1), because Puentes causes Jane Doe 1 to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; (iii) overrules Puentes' Objection to the 2-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(2)(A) as to Count 1, because the offense involved the commission of a sexual act or sexual contact; (iv) sustains Puentes' Objection to the 2-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(3) as to Count 1 because Puentes does not knowingly engage in the distribution of child pornography; (v) sustains Puentes' Objection to the PSR ¶ 13, at 4, because Puentes does not post sexually explicit photos of Jane Doe 1 online; (vi) overrules Puentes' Objection to the PSR ¶ 14, at 4, because Puentes does not contest the factual accuracy of these statements; and (vii) sustains Puentes' Objection regarding the PSR ¶ 23, at 7, because Jane Doe 2 is twelve years old at the time that the conversations between Puentes and Jane Doe 2 begin.

## **FINDINGS OF FACT**

Puentes does not object to the PSR facts except those in ¶¶ 13, 14, 23, at 4, 7.  <u>See</u> Objections at 7-8.  Those undisputed facts are the Court's findings of fact.  <u>See</u> Fed. R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact.").  Regarding PSR ¶¶ 13, 23, at 4, 7, the Court sustains Puentes' objection and incorporates

his proposed finding of fact as the Court's.  Regarding PSR ¶ 14, at 4, the Court concludes that the United States shows -- by a preponderance of the evidence -- that the allegations in those paragraphs are true. The Court therefore makes the allegations in PSR ¶ 14, at 4, the Court's findings of fact.

When resolving factual Objections, the Court must determine whether the United States meets its burden of proving disputed facts by a preponderance of the evidence.  See United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008).  In evaluating whether the United States has met its burden, "sentencing courts may consider hearsay evidence provided that the evidence has sufficient indicia of reliability."  United States v. Dazey, 403 F.3d 1147, 1177 n.7 (10th Cir. 2005).  See U.S.S.G. § 6A1.3.[1]  "This is not a high standard, for it requires only 'minimal indicia of

---

[1] Although a district court "resolving any dispute concerning a factor important to the sentencing determination . . . may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy," U.S.S.G. § 6A1.3, the Federal Rules of Evidence can be relevant to fact-finding at sentencing.  In United States v. Calvert-Cata, No. CR 16-4566 JB, 2022 WL 14813473, at *12 (D.N.M. October 26, 2022)(Browning, J.)*, aff'd*, No. 23-2000, 2024 WL 33901 (10th Cir. January 3, 2024), the Court holds, in a revocation context, that it may consider and rely upon out-of-court statements if those statements are admissible under the Federal Rules of Evidence and under Crawford v. Washington, 541 U.S. 36 (2004)("Crawford"), without evaluating separately those statements' reliability.  See United States v. Calvert-Cata, 2022 WL 14813473, at *12.  The Court reasons that, "because evidentiary standards for revocation hearings are supposed to be more inclusive and flexible than trials," it "makes no sense to require the United States to" clear hurdles that are not there at trial.  Calvert-Cata, 2022 WL 14813473, at *12.

Here, the Court concludes that the same principles apply and that, in a sentencing context, it may consider and rely upon out-of-court statements that are admissible under the Federal Rules of Evidence without evaluating separately those statements' reliability.  Like revocation hearings, sentencing hearings are supposed to have more inclusive and flexible evidentiary standards than trials.  For example, at sentencing, district courts use a preponderance of the evidence standard to resolve factual disputes and apply sentencing enhancements.  See United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008); United States v. Magallanez, 408 F.3d 672, 685 (10th Cir. 2005).  Similarly, a district court may "revoke supervised release after concluding that the defendant violated a condition of probation by a preponderance of the evidence."  United States v. Hykes, 653 F. Supp. 3d 913, 926 (D.N.M. 2022)(Browning, J.)(citing 18 U.S.C. § 3583(e)).  A district court may also consider, for both sentencing and revocation, out-of-court statements that are not admissible at trial.  See U.S.S.G. § 6A1.3; Fed. R. Crim. P. 32.1(b)(2)(C).  Moreover, the standard for considering an out-of-court statement at sentencing is higher than the standard for considering

reliability.'" United States v. Ayon, 226 F. App'x 834, 840 (10th Cir. 2007)(unpublished)(quoting

United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995)).

1.      On January 13, 2022, fifteen-year-old Jane Doe 1, born in 2006, reports that she is

the victim of online exploitation that takes place over a three year span, starting in April, 2019,

when she is about twelve-years old.  See PSR ¶ 12, at 4.

2.      While in seventh or eighth grade, Jane Doe 1 sends a nude image to a female friend

who later uses the image online while pretending to be Jane Doe 1.  See PSR ¶ 12, at 4.

3.      Puentes subsequently contacts Jane Doe 1, and Puentes threatens to share more

images of Jane Doe 1 online if she does not send him more nude pictures.  See PSR ¶ 12, at 4.

---

an out-of-court statement at revocation.  At sentencing, a district court need only determine that
the statement has "sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. §
6A1.3.  See United States v. Dazey, 403 F.3d 1147, 1177 n.7 (10th Cir. 2005).  At revocation, a
district court must weigh the statement's reliability and the defendant's interest in cross-
examination against the United States' explanation for not presenting a witness.  See United States
v. Jones, 818 F.3d 1091, 1099-1100 (10th Cir. 2016); United States v. Murphy, 769 F. App'x 631,
633-34 (10th Cir. 2019).  Given that it is easier to consider an inadmissible out-of-court statement
at sentencing, it makes sense to apply the Court's reasoning in United States v. Calvert-Cata to
sentencing; if the Court can consider admissible out-of-court statements at revocation without
evaluating separately whether those statements are reliable, then the Court can do the same at
sentencing, where the evidentiary hurdle is lower.

United States v. Murphy is an unpublished opinion, but the Court can rely on an
unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned
analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are
not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

In this circuit, unpublished orders are not binding precedent, . . . and we
have generally determined that citation to unpublished opinions is not favored.
However, if an unpublished opinion or order and judgment has persuasive value
with respect to a material issue in a case and would assist the court in its disposition,
we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United
States v. Murphy, and United States v. Ayon, 226 F. App'x 834 (10th Cir. 2007), have persuasive
value with respect to a material issue, and will assist the Court in its disposition of this
Memorandum Opinion and Order.

4.      Communicating with Jane Doe 1 over Instagram, TikTok, and Snapchat, Puentes orders Jane Doe 1 to provide him with sexually explicit photographs and videos of herself under threat that he will post the explicit material online for Jane Doe 1's social media followers to see. See PSR ¶ 12, at 4.

5.      During a forensic interview that takes places on March 7, 2023, Jane Doe 1 clarifies that Puentes is aware of her age, twelve or thirteen, and that Puentes states that he does not care about her age and says that "her ass was fat."  PSR ¶ 19, at 5.

6.      These threats continue over a span of three years, during which time Puentes uses multiple social media accounts created across multiple social media platforms to communicate with and receive child pornography from Jane Doe 1.  See PSR ¶ 13, at 4.

7.      Whenever Jane Doe 1 blocks the social media accounts, Puentes creates new accounts and continues to harass her.  See PSR ¶ 13, at 4.

8.      Throughout the course of the abuse, Puentes misrepresents his age to Jane Doe 1, representing that he is seventeen or eighteen.  See PSR ¶ 16, at 5.

9.      On January 18, 2022, investigators meet with Jane Doe 1 and receive consent to search her electronic devices.  See PSR ¶ 14, at 4.

10.      Law enforcement conduct an extraction of Jane Doe 1's iPhone and observe dozens of nude images and videos of Jane Doe 1 exposing her genitals.  See PSR ¶ 14, at 4.

11.      Some of the files show Jane Doe 1 fully naked engaging in sexual intercourse, bent over with her vagina exposed, and in the shower with her vagina partially exposed.  See PSR ¶ 14, at 4.

12.      The files appear sexual in nature, and focus on Jane Doe 1's genitals and breasts. See PSR ¶ 14, at 4.

13.    Jane Doe 1 reaches out to law enforcement again on January 31, 2022, stating that her friends have reported a Snapchat account that is posting more nude photographs of her on Snapchat.  See PSR ¶ 15, at 4.

14.    The police report from the incident states that the Snapchat material reported to be child sexual abuse material does not show Jane Doe 1 "exposing her genitals."  State of New Mexico Uniform Incident Report, at 3, filed January 21, 2026 (Doc. 79).

15.    The account posting the photographs is the same account that Puentes previously uses to threaten Jane Doe 1 and demand nude photographs from her.  See PSR ¶ 15, at 4.

16.    Jane Doe 1 reports to law enforcement that Puentes continues to harass her using different accounts and/or posting her images/videos online on February 10, 2022, February 19, 2022, March 5, 2022, March 26, 2022, and June 4, 2022.  See PSR ¶ 14, at 4.

17.    Jane Doe 1 does not always use the word "nude" to refer to completely naked photographs, but sometimes will use the word to refer to photographs in her underwear.  See Forensic Interview of Jane Doe 1, dated March 7, 2023, at 10:17:01-10:17:40.

18.    On February 22, 2023, investigators review Instagram records for Puentes' account and Jane Doe 1's account.  See PSR ¶ 17, at 5.

19.    Instagram records show conversations between Puentes and Jane Doe 1.  See PSR ¶ 17, at 5.

20.    Investigators view numerous conversations that are sexual in nature; for example, in one conversation, Jane Doe 1 sends Puentes an image depicting buttocks wearing pink underwear with her vagina exposed.  See PSR ¶ 17, at 5.

21.    In another conversation, Puentes directs Jane Doe 1 to create and send images of herself in real time, and in response to one attachment sent by Jane Doe 1 Puentes states: "Fasho

been naughty, ya lil pussy playing peek a boo with me."  See Instagram Messages between Jane

Doe 1 and Puentes, dated July 31, 2021, filed December 22, 2025 (Doc. 69, at 10-13).

      22.    In another conversation, Puentes sends Jane Doe 1 a link to "BombBooty.pics."

PSR ¶ 17, at 5.

      23.    Jane Doe 1 responds, asking Puentes why he posted her pictures and is angry that

he posted her pictures.  See PSR ¶ 17, at 5.

      24.    Puentes then requests that Jane Doe 1 participate in a video chat with him until he

ejaculates, and there are several indications of video calls between Puentes and Jane Doe 1.  See

PSR ¶ 17, at 5.

      25.    After reviewing the Instagram records, law enforcement determines that Puentes

and Jane Doe 1 have chatted extensively, and that Jane Doe 1 sends over approximately 100

attachments -- presumed to be photos -- to Puentes.  See PSR ¶ 17, at 5.

      26.    During her March 7, 2023, forensic interview, Jane Doe 1 identifies several

photographs that law enforcement show her as photographs of herself, and reiterates that Puentes

constantly asks for more pictures and continues posting her pictures online.  See PSR ¶ 19, at 5.

      27.    Jane Doe 1 also discloses that Puentes would demand she create photographs for

him, rather than send images she had saved.  See Forensic Interview of Jane Doe 1, at 10:23:12,

filed December 22, 2025 (Doc. 70).

      28.    During the same interview, Jane Doe 1 further discloses that she sent Puentes a

photograph of her rubbing her clitoris in response to Puentes' request for pictures of her playing

with herself.  See Forensic Interview of Jane Doe 1 at 10:23:40-10:25:00.

      29.    On March 31, 2023, law enforcement execute a search warrant at Puentes'

residence.  See PSR ¶ 20, at 6.

30.    During the search, law enforcement seizes three telephones which Puentes admits are his.  See PSR ¶ 20, at 6.

31.    While searching one telephone, investigators locate child pornography of Jane Doe 1, and also locate evidence of a second victim, Jane Doe 2, from whom Puentes is also requesting sexually explicit material.  See PSR ¶ 20, at 6.

32.    While law enforcement executes the search warrant, investigators interview Puentes.  See PSR ¶ 21, at 6.

33.    During the interview, Puentes admits to using several different social media accounts, which he provides to law enforcement.  See PSR ¶ 21, at 6.

34.    Puentes also admits to threatening underage females in the past to send him sexually explicit material.  See PSR ¶ 21, at 6.

35.    When asked if he posts females' nude photographs on social media, Puentes responds "I might have done that actually, if you don't send me more."  PSR ¶ 21, at 6.

36.    In response to the question of how many girls he has posted their nude photographs on social media, Puentes responds: "I wouldn't say more than two or three."  PSR ¶ 21, at 6.

37.    Law enforcement also asks Puentes if he knows the girls are underage, and he responds "Perhaps."  See PSR ¶ 21, at 6.

38.    Investigators ask whether Puentes threatens Jane Doe 1, and Puentes admits that he has threatened her.  See PSR ¶ 21, at 6.

39.    Following the search at Puentes' residence, law enforcement obtain and execute search warrants on social media accounts, including a Snapchat account.  See PSR ¶ 23, at 7.

40.    In reviewing the Snapchat records, law enforcement observe photos of a girl exposing her breasts, who law enforcement subsequently identifies as Jane Doe 2 -- birth year 2009.  See PSR ¶ 23, at 7.

41.     The chats include lengthy sexual conversations between Puentes, who is approximately twenty-one years old at the time of the chats, and Jane Doe 2, who is approximately twelve years old at the time of the chats.  See PSR ¶ 23, at 7.

42.     During one conversation, Puentes asks Jane Doe 2 for more nude photographs.  See PSR ¶ 23, at 7.

43.     During several other conversations, Puentes and Jane Doe 2 discuss Jane Doe 2 sneaking out of her house, and meeting Puentes at his house or at a public park to have sex.  See PSR ¶ 24, at 7.

44.     During a forensic interview with Jane Doe 2 that takes place on June 12, 2023, Jane Doe 2 reports that she meets Puentes in a park multiple times, during which time they kiss and smoke marijuana, and she performs oral sex on Puentes approximately four times.  See PSR ¶ 26, at 7.

45.     Jane Doe 2 states that she is approximately thirteen years old when she performs oral sex on Puentes.  See PSR ¶ 26, at 7.

46.     Puentes also uses his telephone to send money to Jane Doe 2 via CashApp in exchange for her willingness to meet with him.  See PSR ¶ 24, at 7.

47.     Additional conversations between Puentes and Jane Doe 2 consist of Puentes discussing the sexual things he wants to do with Jane Doe 2, including oral and vaginal sex, as well as Puentes continuing to ask Jane Doe 2 for nude photos.  See PSR ¶ 24, at 7.

48.     During the conversations between Puentes and Jane Doe 2, Puentes misrepresents his age to Jane Doe 2, representing that he is fifteen years old during a conversation on October 19, 2021, in response to Jane Doe 2's disclosure that she is thirteen years old.  See PSR ¶ 24, at 7.

49.     Records indicate that Puentes and Jane Doe 2 talk extensively for approximately two years.  See PSR ¶ 24, at 7.

50.     During her forensic interview on June 12, 2023, Jane Doe 2 states that she felt Puentes manipulates her to send the pictures, and that he gets mad at her if she did not send him pictures.  See PSR ¶ 26, at 8.

51.     Jane Doe 2 states that she sent Puentes photographs of her breasts and her butt, but never of her vagina, and that Puentes sends her pictures of his penis.  See PSR ¶ 26, at 8.

52.     Jane Doe 2 estimates that she sent photographs to Puentes ten times.  See PSR ¶ 26, at 8.

## PROCEDURAL BACKGROUND

On December 6, 2023, the Grand Jury files a Superseding Indictment is filed in the United States District Court for the District of New Mexico, charging the defendant as follows:

> Count 1: Adrian Puentes with Coercion and Enticement of a Minor. The offense occurred from on or about June 29, 2021 and continued to on or about December 1, 2021, in Bernalillo County and elsewhere.

> Count 2: Adrian Puentes with Coercion and Enticement of a Minor. The offense occurred from on or about October 19, 2021 and continued to on or about March 23, 2023, in Bernalillo County and elsewhere.

PSR ¶ 1, at 3.  On July 25, 2025, Puentes pleads guilty to Counts 1 and 2 of the two-count Indictment.  See PSR ¶ 2, at 3.  Both Count 1 and Count 2 charge Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b).  See PSR ¶ 2, at 3.

On January 28, 2025, the United States Parole Office ("USPO") files the PSR, which applies a total offense level of 40 for Count 1 and 46 for Count 2, treated as 43 pursuant to Chapter 5, Part A (comment n.2) of the United States Sentencing Guidelines ("U.S.S.G.").  See PSR at 9, 11.  On December 1, 2025, Puentes files the Objections, which make seven Objections to the PSR.  See Objections at 2, 8.  Puentes' first Objection is that the PSR erroneously applies an 8-point enhancement under U.S.S.G. § 2G1.3(b)(5) for Count 2.  See Objections at 2.  Section 2G1.3(b)(5) provides for an 8-level enhancement if subsection (a)(3) or (a)(4) applies, and the offense involves

a minor who is not yet the age of twelve years.  See U.S.S.G. § 2G1.3(b)(5).  Puentes does not

dispute that subsection (a)(3) applies, but disputes the conclusion that Jane Doe 2 is under the age

of twelve at the time of the offense.  See Objections at 2.  Puentes argues that, according to the

chat messages between him and Jane Doe 2 that the United States provides, the initial introduction

between the two is on October 19, 2021.  See Objections at 2.  Puentes observes that Jane Doe 2's

date of birth is June, 2009, and, as a result, she attains the age of twelve years before the offense's

commission.  See Objections at 2.  Puentes' second Objection is that the PSR erroneously cross-

references U.S.S.G. § 2G2.1 for Count 1.  See Objections at 3.  Section 2G2.1 applies "[i]f the

offense involved causing, transporting or offering or seeking by notice or advertisement, a minor

to engage in sexually explicit conduct for the purpose of producing a visual depiction of such

conduct."  U.S.S.G. § 2G1.3(c)(1).  Puentes argues first that the United States does not prove by a

preponderance of the evidence that the attachments which Jane Doe 1 sends to Puentes, the

majority of which law enforcement cannot access, involve "sexually explicit conduct," as §

2256(c) defines the term.  See Objections, at 3.  Acknowledging that one of the images that the

United States is able to access can fall within the definition of sexually explicit conduct, Puentes

also argues that he does not "cause" the production of that particular photo. Objections at 4.

Puentes' third Objection is that, if the Court overrules Puentes Objection to the cross-reference to

§ 2G2.1 for Count 1, the PSR erroneously applies a two-level enhancement under U.S.S.G. §

2G2.1(b)(2)(A) as to Count 1.  See Objections at 5.  Puentes objects to the application of §

2G2.1(b)(2)(A), because he never has any physical contact at all with Jane Doe 1 as the definition

of sexual act or sexual contact under § 2G2.1(b)(2)(A) requires, despite Puentes' admission in his

Plea Agreement that "'he agrees that his conduct caused Jane Doe 1 to engage in sexual activity.'"

Objections at 6 (quoting PSR ¶ 22 at 6).  Puentes' fourth Objection is that the PSR erroneously

applies a 2-level enhancement under U.S.S.G. § 2G2.1(b)(3) as to Count 1, which applies if the

defendant knowingly engages in distribution of child pornography.  See Objections at 6.  Puentes argues that the United States cannot demonstrate that he knowingly engages in distribution of child pornography, because law enforcement cannot obtain any of the photographs Puentes allegedly posts to or distributes on social media, and Jane Doe 1 does not provide enough description of the photographs that Puentes posts to constitute child pornography.  See Objections at 7.  Puentes' fifth Objection is that PSR ¶ 13, at 4, suggests incorrectly that he posts sexually explicit photographs of Jane Doe 1 online.  See Objections at 7.  Puentes argues that law enforcement is never able to obtain images that are reported to be posted publicly online.  See Objections at 7.  Puentes also objects to the statement that he uses TikTok to communicate with Jane Doe 1.  See Objections at 8.  Puentes' sixth Objection is that he does not cause the production of or receive the sexual-in-nature materials that law enforcement discovers on Jane Doe 1's telephone as PSR ¶ 14, at 4, describes.  See Objections at 8.  Puentes' seventh and final Objection is that PSR ¶ 23, at 7, incorrectly states that Jane Doe 2 is eleven years old at the time of the sexual conversations between Puentes and Jane Doe 2.  See Objections, at 8.

On December 22, 2025, the United States files its Response.  The United States first agrees with Puentes that the 8-level enhancement under U.S.S.G. § 2G1.3(b)(5) as to Count 2 does not apply, because Jane Doe 2 is twelve years old when Puentes first begins talking to her.  See Response at 1.  In response to Puentes' second Objection to the application of the cross-reference at U.S.S.G. § 2G1.3(c)(1) for Count 1, where Puentes argues he never causes Jane Doe 1 to produce child pornography, the United States contends that this argument is contrary to Puentes' admissions in his plea agreement:

> I used the social media platform Instagram to coerce Jane Doe 1 over the internet to send me sexually explicit photographs. . . .  I agree my conduct caused Jane Doe 1 to engage in sexual activity for which any person could be charged with a criminal offense, as that phrase is defined under federal law.

Response at 2 (quoting Plea Agreement ¶ 9, at 5, filed July 25, 2025 (Doc. 52)).  The United States argues that the fact that Puentes admits to causing Jane Doe 1 to engage in sexual activity and then coercing her into sending that material means that Puentes therefore admits to causing Jane Doe 1 to produce child pornography.  See Response at 2.  The United States also points to the chat messages between Puentes and Jane Doe 1 in which "he instructs her on how precisely to pose for him and create his child pornography" as support for the conclusion that Puentes causes Jane Doe 1 to produce child pornography.  Response at 2.  In response to Puentes' third Objection to the 2-level enhancement for U.S.S.G. § 2G2.1(b)(2)(A) for Count 1, where Puentes argues that causing Jane Doe 1 to engage in sexual activity -- masturbation at his request -- does not constitute "sexual contact" as 18 U.S.C. § 2246(3) defines the term, because he does not make physical contact with Jane Doe 1, the United States argues that this is interpretation is an incorrect construction of "sexual contact" under § 2246(3).  Response at 17.  Section 2246(3) defines sexual contact as "the intentional touching, either directly or through the clothing, of the genitalia . . . of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).  The United States draws on the phrase "any person" to argue that the "touching does not have to be by a defendant, but rather, by any person, which would include when a victim touches themselves at the behest and direction of a defendant."  Response at 17.  The United States concludes that Puentes' third Objection should be overruled, because Puentes causes Jane Doe 1 to engage in sexual contact by virtue of coercing Jane Doe 1 to masturbate for him. See Response at 18.  Next, the United States addresses Puentes' fourth Objection, to the two-level enhancement under U.S.S.G. § 2G2.1(b)(3) as to Count 1 for knowing distribution of child pornography, and the United States references chats between Puentes and Jane Doe 1 which the United States contend demonstrates that Puentes did knowingly distributes child pornography.  See Response at 18.  In response to Puentes' fifth Objection to PSR ¶ 13, at 4, the United States

contends that the Court should overrule Puentes' Objection because Puentes posts sexually explicit photographs of Jane Doe 1. See Response at 24. Addressing Puentes' sixth Objection to PSR ¶ 14, at 4, the United States contends that Puentes admits to coercing Jane Doe 1 to send him sexually explicit photographs, and that "this is precisely what was discovered on [Puentes'] phone as Paragraph 14 states." Response at 24. Finally, in response to Puentes' seventh Objection to PSR ¶ 23, at 7, the United States does not object to this correction. See Response at 25.

On January 5, 2026, Puentes files his Defendant's Reply to United States' Response to Objections to the Presentence Investigation Report, filed January 5, 2026 (Doc. 71)("Reply"). Puentes begins by stating that he seeks to avoid requiring Jane Doe 1 to retell her story in a public setting, and therefore rests on the briefs regarding "any and all" outstanding legal disputes, and maintains that the Court can resolve all remaining factual disputes without an evidentiary hearing. Reply at 2. Regarding Puentes' second Objection to the cross-reference at § 2G1.3(c)(1) for Count 1, Puentes agrees that he admits in his plea agreement to coercing Jane Doe 1 to send him sexually explicit photograph, but reasserts that this coercion is different from causing Jane Doe 1 to create the photograph. See Reply at 2. Puentes next discusses his third Objection to the 2-level enhancement under § 2G2.1(b)(2)(A) as to Count 1 for "sexual contact" under § 2246(3), and states that his Objection is not a legal dispute, but instead a concern that the reasons in the PSR for the application of the enhancement -- reliance on Puentes' Plea Agreement in which he admits to causing Jane Doe 1 to engage in sexual activity -- are insufficient. See Reply at 6. In response to the United States' contention that the enhancement applies, because Jane Doe 1 states in her forensic interview that she touched herself at Puentes' request, Puentes does not deny that Jane Doe 1 states that Puentes always asks her to touch herself, but highlights that law enforcement does not recover images of this act. See Reply at 6. Finally, Puentes states that he maintains his fourth Objection to the 2-level enhancement under § 2G2.1(b)(3) as to Count 1 for knowing

distribution of child pornography.  See Reply at 6.  Puentes clarifies that he does not dispute that he posts images of Jane Doe 1, but he challenges the conclusion that any of these photographs constitute child pornography.  See Reply at 6.  Puentes contends that, because law enforcement does not recover any of the photographs which Puentes allegedly posts or distributes on social media platforms, the United States cannot demonstrate that Puentes knowingly engages in distribution of child pornography.  See Reply at 7.

On January 15, 2026, the USPO responds to the Objections.  See Addendum to the Presentence Investigation Report at 1, filed January 15, 2026 (Doc. 73)("Addendum").  Regarding Puentes' first Objection to the 8-level enhancement at to Count 2 pursuant to U.S.S.G. § 2G1.3(b)(5), the USPO agrees with Puentes and the United States that the USPO should remove this enhancement from the PSR, based on new information that the USPO receives clarifying Jane Doe 2's birth month.  See Addendum at 1.  As to Puentes' second Objection to the application of the cross-reference at U.S.S.G. § 2G1.3(c)(1) as to Count 1, the USPO agrees with the United States that this cross-reference should apply, because the offense involves causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. See Addendum at 2.  Specifically, the USPO highlights an image that Jane Doe 1 sends to Puentes "depicting buttocks wearing pink underwear with her vagina exposed" and the time that Jane Doe 1 sends Puentes a photograph of her rubbing her clitoris in response to Puentes' frequent request that she send pictures of herself masturbating as evidence for the cross-reference to apply. Addendum at 2-3.  In response to Puentes' third Objection to the 2-level enhancement as to Count 1 pursuant to U.S.S.G. § 2G2.1(b)(2)(A), which applies if the offense involves the commission of a sexual act or sexual contact, the USPO agrees with the United States' analysis of the definition of "sexual contact," as 18 U.S.C. §2246(3) defines the term, to include when victims touch themselves.  Addendum at 3.  Because Puentes requests photographs from Jane Doe 1 of her

masturbating, the USPO concludes that this enhancement should apply.  See Addendum at 3. Regarding Puentes' fourth Objection to the 2-level enhancement as to Count 1 pursuant to U.S.S.G. § 2G2.1(b)(3), which applies if the defendant knowingly engages in distribution of child pornography, the USPO cites, in support of the conclusion that the enhancement should apply, to Jane Doe 1's forensic interview and to statements that Puentes makes to law enforcement in which he says "I might have done that actually . . ." in response to the question if he has ever posted nude photographs online.  Addendum at 4.  In response to Puentes' fifth Objection to the portion of PSR ¶ 13, at 4, which states that Puentes posts sexually explicit photographs online, the USPO maintains that this information is accurate.  See Addendum at 4.  In response to Puentes' sixth Objection to the portion of PSR ¶ 14, at 4, which states that there is material on Jane Doe 1's telephone that is "sexual in nature," the USPO maintains that this information is accurate.  See Addendum at 4.  In response to Puentes' seventh Objection to the portion of PSR ¶ 23, at 7, which states that Jane Doe 2 is eleven-years old at the time of the conversations between Puentes and her, the USPO states that it amends the PSR to reflect that Jane Doe 2 was twelve-years old given the parties' agreement.

On January 15, 2026, the USPO files a revised Presentence Investigation Report, which revises paragraph 23 to reflect that Jane Doe 2 is twelve-years old when conversations between her and Puentes begin, and removes the 8-level enhancement applied as to Count 2 pursuant to U.S.S.G. § 2G1.3(b)(5).  See Memorandum to the revised Presentence Investigation Report, at 1, filed January 15, 2026 (Doc. 72).

## ANALYSIS

The Court sustains in part and overrules in part the Objections.  First, the Court sustains Puentes' first Objection to the 8-level enhancement under § 2G1.3(b)(5) as to Count 2, because Jane Doe 2 is twelve-years old when Puentes first makes contact with her.  Second, the Court

- 16 -

overrules Puentes' second Objection to the § 2G1.3(c)(1) cross-reference for Count 1, because Puentes causes Jane Doe 1 to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. Third, the Court overrules Puentes' third Objection to the 2-level enhancement under § 2G2.1(b)(2)(A) as to Count 1, because the offense involves the commission of a sexual act or sexual contact. Fourth, the Court sustains Puentes' fourth Objection to the 2-level enhancement under § 2G2.1(b)(3) as to Count 1, because Puentes does not knowingly engage in the distribution of child pornography. Fifth, the Court sustains Puentes' fifth Objection to the PSR ¶ 13, because Puentes does not post sexually explicit photos of Jane Doe 1 online. Sixth, the Court overrules Puentes' sixth Objection to the PSR ¶ 14, because Puentes does not contest the factual accuracy of these statements. Finally, the Court sustains Puentes' seventh Objection to the PSR ¶ 23, because Jane Doe 2 is twelve years old at the time that her interactions with Puentes begin.

## I.    THE COURT SUSTAINS PUENTES' OBJECTION TO THE 8-LEVEL EHANCEMENT PURSUANT TO U.S.S.G § 2G1.3(b)(5) AS TO COUNT 2.

Section 2G1.3(b)(5) applies an 8-level enhancement if subsection (a)(3) -- a base offense level of 28, if the defendant is convicted under 18 U.S.C. § 2422(b) or § 2423(a) -- or (a)(4) -- a base offense level of 24 otherwise -- applies, and the offense involves a minor who has not attained the age of twelve years. U.S.S.G. § 2G1.3(b)(5). Puentes does not deny that subsection (a)(3) applies, but argues that Jane Doe 2 attains the age of twelve before the conversations between Puentes and Jane Doe 2 begin. See Objections at 2. The United States agrees that the Court should sustain Puentes' Objection, because the available chat messages between Puentes and Jane Doe 2 show that the two first begin chatting on October 19, 2021. See Response at 1. Jane Doe 2 is born in June, 2009, so, accordingly, the first conversation between Puentes and Jane Doe 2 occurs roughly four months after Jane Doe 2's twelfth birthday. See Response at 1. The Court therefore

sustains Puentes' Objection. This ruling lowers the adjusted offense level for Count 2 from 42 to 34.

## II.    THE COURT OVERRULES PUENTES' OBJECTION TO THE APPLICATION OF THE CROSS-REFERENCE TO U.S.S.G. § 2G1.3(c)(1) FOR COUNT 1.

The applicable guideline for a violation of 18 U.S.C. § 2422(b), coercion and enticement of a minor, is U.S.S.G. § 2G1.3. If certain criteria are met, however, § 2G1.3 includes a cross-reference to § 2G2.1. Section 2G2.1 applies "[i]f the offense involved causing, transporting or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." U.S.S.G § 2G1.3(c)(1). Application Note 5 to § 2G1.3 provides that 18 U.S.C. § 2255(2) defines "sexually explicit conduct" for purposes of the cross-reference. Section 2256(2) defines "sexually explicit conduct" as "graphic sexual intercourse including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited." 18 U.S.C. § 2256(2)(B). The definition also includes "graphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(B). The statute defines producing "child pornography" as creating a "visual depiction" of a minor engaged in "sexually explicit conduct." 18 U.S.C. § 2256(8).

Puentes argues that the cross-reference cannot apply, because the United States cannot prove that he "causes" a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. Objections at 4. Puentes argues that there is only one photograph which law enforcement is able to access that falls within the definition of "sexually explicit conduct," an image that PSR ¶ 17, at 5, describes as "depicting buttocks wearing pink underwear" with a partially exposed vagina. Objections at 4. Puentes argues that, even under an expansive definition of "causing," where a defendant causes the production of a photograph when

his coaxing of the victim causes her to engage in sexually explicit conduct and then take a photograph of that conduct to send to the defendant, see United States v. Whitesell, 314 F.3d 1251, 1256 (11th Cir. 2002), the United States cannot prove that he causes the production of the sexually explicit photograph.  See Objections at 4.  The pink underwear photograph appears in an Instagram conversation between Puentes and Jane Doe 1 on July 7, 2021, during which time she begins in the bathroom and sends photographs to Puentes in response to Puentes' requests.  See Response at 2-6.  At 3:33:31 a.m., Puentes comments favorably on a prior attachment that Jane Doe 1 sends while she is in the bathroom.  See Response at 7.  Then, at 3:41:29 a.m., Jane Doe 1 sends the sexually explicit photograph wearing pink underwear, followed by another photograph at 3:41:31 a.m. of buttocks wearing light blue underwear.  See Response at 8.  At 3:41:34 a.m., Jane Doe 1 states "Sorry I had to leave my bathroom" and at the same time sends a photograph or video of buttocks wearing black underwear.  Objections at 5.  Puentes argues that the fact that all three photographs, all displaying different underwear, are sent within a five second timeframe makes it impossible that Jane Doe 1 took these photographs, including the sexually explicit photograph, in response to Puentes' requests.  See Objections at 5.  Puentes maintains that Jane Doe 1 must have created some of the photographs at an earlier date, and therefore he is not responsible for causing the production of the explicit photograph.  See Objections at 5.

The Court agrees with Puentes that this evidence does not prove by a preponderance of the evidence that Puentes causes the production of a sexually explicit photograph as the cross-reference requires.  The Court concludes, given the quick succession in which different photographs in different pairs of underwear are sent, that it is more likely than not that these photographs were taken in advance and not at Puentes' immediate direction.  This evidence, however, is not the only evidence on which the Court may rely to find that the United States has proven by a preponderance of the evidence that Puentes causes a minor to engage in sexually

explicit conduct for the purpose of producing a visual depiction of such conduct. There is another messaging exchange between Puentes and Jane Doe 1 on July 31, 2021, where Puentes is directing Jane Doe 1 to create and send images of herself in real time, one of which the Court determines by a preponderance of the evidence depicts Jane Doe 1's vagina. See Response at 9-13. In response to Puentes' messages -- "That was a bomb lil shake lemme see that again make it longer tho Fuck" and "Or the titty tease," -- Jane Doe 1 sends Puentes four attachments. Response at 13. Puentes then responds: "Fasho been naughty, ya lil pussy playing peek a boo with me." Response at 13. Although law enforcement is unable to recover these attachments in question, the Court determines that the phrase "ya lil pussy playing peek a boo with me" is enough to show by the preponderance of the evidence that Jane Doe 1 takes a photograph that qualifies as sexually explicit conduct -- the "graphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(B). Moreover, the Court determines that Jane Doe 1 takes this photograph in response to Puentes' request for sexually explicit photographs. The Court therefore determines by the preponderance of the evidence that Puentes causes a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. Finally, in Jane Doe 1's forensic interview, Jane Doe 1 discloses that Puentes would demand that she create photographs for him, rather than send images she had saved. See Response at 16 (citing Forensic Interview of Jane Doe 1 at 11:23:12). Jane Doe 1 further discloses that she sent Puentes a photograph of her rubbing her clitoris in response to Puentes' request for pictures of her playing with herself. See Response at 16 (citing Forensic Interview of Jane Doe 1 at 11:23:40-11:25:00). See PSR ¶ 19, at 6. This evidence also supports the Court's conclusion that the United States has shown, by a preponderance of the evidence, that Puentes causes a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct such that the cross-reference to § 2G1.3(c)(1) as to Count 1 applies. Accordingly, the Court overrules Puentes' second Objection.

- 20 -

### III.     THE COURT OVERRULES PUENTES' OBJECTION TO THE 2-LEVEL ENHANCEMENT PURSUANT TO U.S.S.G. § 2G2.1(b)(2)(A) AS TO COUNT 1.

Under Section 2G2.1(b)(2)(A), there is a 2-level enhancement if the offense involves the commission of a sexual act or sexual contact.  See 8 U.S.S.G. § 2G2.1(b)(2)(A).  Puentes argues that the PSR applies this enhancement on the basis of his admission in the plea agreement that "'he agrees that his conduct causes Jane Doe 1 to engage in sexual activity.'"  Objections at 6 (quoting PSR ¶ 22, at 6).  Puentes argues that, although he admits causing Jane Doe 1 to engage in sexual activity, that the definition of "sexual act" or "sexual contact" under § 2G2.1(b)(2)(A), which 18 U.S.C. §§ 2246(2) and (3) defines, requires contact or touching, and that, because he never had any physical contact with Jane Doe 1 that the enhancement cannot apply.  Objections at 6.  In response, the United States highlights that § 2246(3) defines sexual contact to mean "the intentional touching, either directly or through the clothing, of the genitalia . . . of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).  See Response at 17.  The United States maintains that, based on this definition, sexual contact encompasses touching by any person, not solely the defendant, including when a victim touches themselves at the behest and direction of a defendant.  See Response at 17. The United States concludes, therefore, that, in coercing Jane Doe 1 to masturbate for him, Puentes causes Jane Doe 1 to engage in sexual contact.  See Response at 17.  In his reply, Puentes states that the United States "misconstrues" his Objection as a legal dispute, and that he is "not ignorant of case law cited in the United States' response suggesting that self-masturbation could constitute 'sexual contact . . . .'"  Reply at 6.  Instead, his only concern is that the reasons that the PSR states for the application of the enhancement are insufficient.  Reply at 6.  Puentes responds to the United States' contention that the enhancement applies, because of Jane Doe 1's statement that she touches herself at Puentes' request, by stating that he does not deny that Jane Doe 1 states that Puentes

- 21 -

always asks her to touch herself.  See Reply at 6.  The Court interprets Puentes' reply as a waiver of this Objection, given that the enhancement is now based on something beyond what the PSR alleges -- Jane Doe 1's allegation that she touches herself at Puentes' request.  Even if Puentes does not waive his Objection, the Court determines that the United States proves by a preponderance of the evidence that the offense involves the commission of a sexual act or sexual contact, because Jane Doe 1 touches herself in response to Puentes' request, see PSR ¶ 19, at 6, and the applicable definition of sexual contact, § 2246(3), makes clear that self-masturbation can satisfy the requirements of a sexual contact under § 2G2.1(b)(2)(A).  Accordingly, the Court overrules Puentes' third Objection.

## IV.    THE COURT SUSTAINS PUENTES' OBJECTION TO THE 2-LEVEL ENHANCEMENT PURSUANT TO U.S.S.G. § 2G2.1(b)(3) AS TO COUNT 1.

Section 2G2.1(b)(3) provides for a 2-level enhancement if the defendant knowingly engages in distribution of child pornography.  See U.S.S.G. § 2G2.1(b)(3).  Puentes does not deny that he posts images of Jane Doe 1 online, but contends that these images do not meet the definition of "sexually explicit conduct" in 18 U.S.C. § 2256, so as to constitute child pornography.  Objections at 7.  See also 18 U.S.C. § 2256(8) (defining the production of "child pornography" as creating a "visual depiction" of a minor engaged in "sexually explicit conduct.").

> Sexually explicit conduct" requires that the photographs depict "graphic sexual intercourse including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited . . . [or] graphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person.

18 U.S.C. § 2256(2)(B).  Law enforcement is unable to recover any of the images that Puentes posts or otherwise distributes online.  See Objections at 7.  The Court therefore must rely on out-of-court statements to support the conclusion that the images which Puentes posts online constitute a visual depiction of a minor engaging in "sexually explicit conduct."

The United States points to statements from Jane Doe 1's forensic interview in which she states that Puentes repeatedly posts her "nudes" online and sent them to people at her school.  See Response at 24 (citing Forensic Interview of Jane Doe 1 at 11:05).  See PSR ¶ 15, at 4.  The Court notes, however, that Jane Doe 1 does not always use the word "nude" to refer to photographs of her completely naked, but sometimes will use the word to refer to photographs in her underwear.  See Forensic Interview of Jane Doe 1 at 10:17:01-10:17:40 (responding to a question about a described "nude" that Jane Doe 1's ex-girlfriend posts, Jane Doe 1 clarifies "It was just a booty pic, I had underwear on and stuff, it was just like a basic booty pic").  Jane Doe 1 also reaches out to police on January 31, 2022, to report that her friends are reporting to her that a Snapchat account is posting "nude" photos of her on Snapchat.  See PSR ¶ 15, at 4.  The police report states, however, that the Snapchat material reported to be child sexual abuse material does not show Jane Doe 1 "exposing her genitals." Reply at 7 n. 5 (quoting State of New Mexico Uniform Incident Report, at 3, filed January 21, 2026 (Doc. 79)).  The Court therefore concludes that, because the police report determines that these photographs do not show genitals, paired with the knowledge that Jane Doe 1 will use the word "nude" to refer to images that do not qualify as sexually explicit material, the United States has not shown by a preponderance of the evidence that these Snapchat images Jane Doe 1 refers to qualify as sexually explicit material.

The USPO highlights statements made by Puentes to law enforcement on March 21, 2023, as support for the enhancement.  See Addendum at 4.  In response to the question of if he had ever posted females' nude photographs on social media, Puentes responds: "I might have done that actually . . . ."  PSR ¶ 21, at 6.  The Court concludes, however, that there is no or insufficient evidence to demonstrate that Puentes is referring to Jane Doe 1's photographs, and therefore this statement does not lead the Court to conclude the enhancement applies.  Finally, the United States contends that Puentes threatens to send explicit photographs to Jane Doe 1's boyfriend, and that

"[i]f necessary, Jane Doe 1 will testify that Defendant, did ultimately, send sexually explicit material of Jane Doe 1 to her boyfriend." Response at 23.  The Court first notes that this fact is not stated in the PSR or the Addendum.  Second, looking at the messages between Puentes and Jane Doe 1, Puentes threatens only to send Jane Doe 1's photographs to her boyfriend; there is no mention that the photographs are explicit.  See Response at 24.  Taking into account the fact that the majority of photographs which Jane Doe 1 sends to Puentes do not qualify as sexually explicit material, the Court finds this statement in the United States' Response, without more, insufficient to hold that the United States has proven by a preponderance of the evidence that Puentes knowingly distributes child pornography.  See PSR ¶ 19, at 5-6 ("Jane Doe 1 stated there were only two or three times that she sent the defendant fully nude photos, indicating she usually was in her underwear or bra.").  Accordingly, the Court sustains Puentes' fourth Objection.  If, however, the United States chooses to present Jane Doe 1 to testify at the sentencing hearing, and she testifies to the Court's satisfaction that the photographs which Puentes sends to Jane Doe 1's boyfriend qualify as sexually explicit material, then the Court will overrule Puentes' Objection.  In accordance with this ruling, the Court adjusts Puentes' adjusted offense level for Count 1 from 40 to 38 and the applicable offense level from 43 to 42.

## V.    THE COURT SUSTAINS PUENTES' OBJECTION TO PSR ¶ 13, AT 4.

Paragraph 13, at 4, states in relevant part: "Despite her pleas, sexually explicit photos of Jane Doe 1 were posted publicly online."  PSR ¶ 13, at 4.  Puentes objects to this sentence, because it suggests that Puentes posts "sexually explicit photos" of Jane Doe 1 online.  Objections at 7.  The Court agrees with Puentes that this statement, taken in the broader context of paragraph 13, at 4, which discusses Puentes threatening Jane Doe 1 to obtain photographs from her, implies that Puentes is the one who posts sexually explicit photographs of Jane Doe 1.  See PSR ¶ 13, at 4.  Because the Court determines, in response to Puentes' fourth Objection, that the United States does

not prove by a preponderance of the evidence that the photographs which Puentes posts of Jane Doe 1 constitute "sexually explicit" material, the Court sustains Puentes' Objection to this statement in the PSR. If Jane Doe 1 testifies at the sentencing, however, that the photographs which Puentes' posts constitute "sexually explicit material," the Court will overrule this Objection.

## VI.    THE COURT OVERRULES PUENTES' OBJECTION TO THE PSR ¶ 14, AT 4.

Paragraph 14 of the PSR states in relevant part: "Law enforcement conducted an extraction of Jane Doe 1's iPhone and observed dozens of nude images and videos of Jane Doe 1 exposing her genitals. . . . The files appeared sexual in nature and focused on Jane Doe 1's genitals and breasts." PSR ¶ 14, at 4. Puentes does not dispute these facts, but instead contends that the fact that there is sexual in nature material on Jane Doe 1's telephone does not mean that Puentes is associated with these materials. See Objections at 8. The Court concludes that paragraph 14, at 4, of the PSR does not state that Puentes is associated with these materials. Accordingly, because Puentes does not dispute the facts as stated in paragraph 14, the Court determines by a preponderance of the evidence that the facts are true and overrules Puentes' sixth Objection.

## VII.   THE COURT SUSTAINS PUENTES' OBJECTION TO THE PSR ¶ 23, AT 7.

Paragraph 23 of the PSR states in relevant part: "At the time of the chats, the defendant was 21 years old, and Jane Doe 2 was approximately 11 years old." PSR ¶ 23, at 7. In accordance with Puentes' first Objection to the 8-level enhancement under U.S.S.G. § 2G1.3(b)(5) as to Count 2, Puentes objects to the conclusion that Jane Doe 2 is eleven years old at the time of the conversations between Puentes and Jane Doe 2. See Objections at 8. Because no party objects to the conclusion that Jane Doe 2 is twelve years old at the time of the chats, the Court sustains Puentes' Objection. See Response at 25; Addendum at 4.

**IT IS ORDERED** that: (i) the Defendant Adrian Puentes' Objections to the Presentence Investigative Report, filed December 1, 2025 (Doc. 66) ("Objections"), are sustained in part and

overruled in part; (ii) the 8-level U.S.S.G. § 2G1.3(b)(5) enhancement as to Count 2 does not

apply; (iii) the cross-reference to U.S.S.G. § 2G1.3(c)(1) as to Count 1 applies; (iv) the 2-level

enhancement pursuant to U.S.S.G. § 2G2.1(b)(2)(A) as to Count 1 applies; (v) the 2-level

enhancement pursuant to U.S.S.G. § 2G2.1(b)(3) as to Count 1 does not apply; (vi) the applicable

offense level is 42; (vi) the applicable criminal history category is I; (vii) the United States

Sentencing Guidelines establish an imprisonment range of 360 months to life.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Todd Blanche
  Deputy Attorney General
Ryan Ellison
  Acting United States Attorney
Jesse Pecoraro
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Emily P. Carey
  Assistant Federal Public Defender
Office of the Federal Public Defender
Albuquerque, New Mexico

      *Attorney for the Defendant*